UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 05-10251-MLW |
| ) | |
| ) | |
| v. ) | |
| ) | |
| TIRSON SANTANA a/k/a ) | |
| Tirson Santan-Guerrero a/k/a ) | |
| German Rivera a/k/a ) | |
| German Ocasio Rivera a/k/a ) | |
| Tirson Guerrero ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Michael J. Sullivan, U.S. Attorney for the District of Massachusetts and Nadine Pellegrini, Assistant U.S. Attorney, hereby files this Sentencing Memorandum in the above-captioned case.

**I. Guideline Calculation**

The government submits that the guideline calculation contained within the pre-sentence report is correct.

Defendant has objected to the calculation of his criminal history. Currently, the calculation is Criminal History IV, with 8 points. At issue are the 2 points applied pursuant to U.S.S.G. §41A1.1(e).

1

Defendant claims that since he was "found" in the United States at a time prior to the imposition of the state sentence, the enhancement is improperly applied.[1]  However, the date that is used to determine the calculations within the guidelines is set by the indictment. United States v. Coeur, 196 F.3d 1344, 1346 (11th Cir. 1999)("[w]e have held that when a defendant enters a plea of guilty to being "found in" the United States on a certain date, the issue of when the offense was committed is settled, and the defendant may not later dispute that date."). In this case, the Defendant entered a plea of guilty to the indictment which charged him with being found in the United States on or about August 16, 2005.  The date of the offense for

---

[1]Defendant was located by ICE agents while in pre-trial state custody. He had not yet been convicted or sentenced. He was using another name but agents were able, in August of 2004, to determine, through fingerprint comparison, that the Defendant was actually Tirson Santana who had been previously deported. The Defendant remained in state custody and was eventually convicted of state charges in January of 2005.  He was sentenced and, after the completion of his sentence, was turned over to ICE officials. This transfer occurred on August 16, 2005 which is the date charged in the Indictment.
    It has been, and remains, the practice of the United States Attorney's Office for the District of Massachusetts to charge the Defendant with being found in the United States on the day that the alien comes into ICE administrative custody. This policy is in place for several reasons including (1) the certainty provided by that date which is preferred to the uncertainty as to when the Defendant actually re-entered the United States; (2) in the great majority of cases, the fingerprint comparison usually does not occur until after the alien comes into ICE administrative custody and (3) the use of that date provides assurance that the alien was, in fact, prosecuted within the time limits set by the USAO and his/her deportation continued expeditiously.

sentencing purposes was, therefore, less than two years following the Defendant's release from custody and was within the application of U.S.S.G. §4A1.1(e).

**II. Sentence Recommendation**

The government is recommending that the court consider a sentence of 57 months, two years of supervised release, and a mandatory special assessment of $100. The government is not recommending the imposition of a fine as it does not appear from the pre-sentence report that the defendant is, or will be able to, pay a fine.

The government's recommendation is based upon the application of the guidelines as well as a consideration of relevant factors from 18 U.S.C. 3553(a). In particular, the government refers the court to 3553(a)(2)(A), (B) and (C).[2]

In this case, the Defendant had previously been convicted and sentenced in federal court for conspiracy to distribute and possess cocaine. He received a sentence of 33 months in 1999. He was then ordered deported by an Immigration Judge in 2000.

---

[2] 3553(a)(2)(A) states, in relevant part, that the court shall consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.
 3553(a)(2)(B) states, in relevant part, that the court shall consider the need for the sentence imposed to afford adequate deterrence to criminal conduct.
 3553(a)(2)(C) states, in relevant part, that the court shall consider the need for the sentence imposed to protect the public from further crimes of the defendant.

Prior to his removal, he was advised that he could not re-enter the United States at any time because he had been convicted of an aggravated felony.[3]  The Defendant obviously returned to the United States in defiance of that order.  Although he claims he returned to be with his family, [PSR ¶¶56-57], he did not reside with his family. The mother of his children indicates that "she did not want the defendant to reside with her because she knew he was using drugs and did not want his use to negatively influence their children." [PSR ¶58].

While here illegally, the Defendant was again arrested and convicted of possession with intent to distribute cocaine. In an attempt to disguise his identity, the Defendant used a false name when arrested by law enforcement officials.

Defendant essentially defied the courts by returning to the United States and endangered the public upon his return by his continuing drug dealing.

There is simply nothing in the Defendant's history which reflects the need to deviate from or depart from the guideline range.[4]

---

[3]This warning is in the document Warning to Alien Ordered Removed and Deported, dated October 23, 2000. The document, which is contained in the Defendant's Alien registration file has been previously provided to the Defendant. The document bears the inked right index finger of the Defendant as evidence that he was provided with such notice.

[4]To the extent that the government anticipates that the Defendant will argue a disparity in his sentence with those in

```
                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                        By:   /s/Nadine Pellegrini
                              Nadine Pellegrini
                              Assistant U.S. Attorney
```

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by electronic filing:
```
                    Glen Randall, Esq.
                    Grandall@randalllawoffices.com
```

This 11 day of April, 2006.

```
                               /s/Nadine Pellegrini
                              Nadine Pellegrini
                              ASSISTANT UNITED STATES ATTORNEY
```

---

districts which have "fast track" programs, the government notes that the First Circuit has rejected "equal protection challenges to the fast track program on the ground that similarly situated defendants in fast track jurisdictions could receive four-level departure not available to defendants in non-fast track jurisdictions. See United States v. Melendez-Torres, 420 F.3d 45,52-53 (1st Cir. 2005).  This court has also stated, in dicta, that it is arguable that even post-Booker, it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT ACT provision that such disparities are acceptable." United States v. Montero-Diaz, 2006 WL 845809 (1st Cir. Puerto Rico)(April 3, 2006).