<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

</div>

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
                                    )
            **v.**                  )            **CRIMINAL ACTION**
                                    )            **No. 05-CR-10251-MLW**
                                    )
**TIRSON SANTANA**                  )
            **DEFENDANT**           )
_____)

<div align="center">

**DEFENDANT'S SENTENCING MEMORANDUM**

</div>

Now comes the defendant, Tirson Santana, in the above entitled Criminal Action and hereby respectfully submits the following Sentencing Memorandum to aid the court in sentencing. The defendant hereby sets forth all factors that the Court should consider in determining what sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553 (a).

<div align="center">

**I - INTRODUCTION**

</div>

Tirson Santana plead guilty on January 20, 2006 to a one count Indictment charging a violation of 8 U.S.C. § 1326(a), (b)(2). The United States Probation Office has calculated the guideline sentencing range as 57-71 (Offense Level 21, Total Points 8, Category IV) months (PSR ¶ 91). However, Mr. Santana respectfully suggests that the appropriate guideline calculation is 46-57 months (Offense Level 21, Total Points 6, Category III). Moreover, the defendant requests that the court impose a sentence between 24-30 months.

<div align="center">

1

</div>

The defendant respectfully suggests that this proposed sentence is a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (January 12, 2005). Under the circumstances of this case which include; (1) potential sentencing disparity between the defendant and other defendants amendable to the "fast track" system; (2) the two point enhancement is not appropriate and is not supported by the undisputed facts; (3) the defendant has been incarcerated since July 16, 2004 and will continue to be incarcerated and that the aggregate total of imprisonment is substantial; and (4) it is likely that the defendant will be further detained following the completion of his sentence pending deportation proceedings. Therefore, the proposed sentence is reasonable, sufficient and not greater than necessary.

## II - THE DEFENDANT'S CRIMINAL HISTORY COMPUTATION SHOULD NOT BE INCREASED BY TWO POINTS

The United States Probation Department has made the preliminary determination that "The instant offense was committed less than two (2) years following the defendant's release from custody on 8/1/05 for the sentences imposed on 1/28/05 (see paragraph 28). Two (2) points are added, pursuant to U.S.S.G. § 4A1.1 (e)." PSR ¶ (31)

The defendant has respectfully objected to this calculation and to the two (2) points being added. The date of offense is not an element of the crime, but rather a sentencing enhancement. In support of the defendant's position, defendant states that on August 19, 2004, the ten-fingerprint card taken by the Boston Police on July 15, 2004, and the right index print taken on November 11, 2000 from the I-205 were sent to the Federal Bureau of Investigation Special Processing Center in West Virginia for comparison. The FBI confirmed that both fingerprints submitted were identical with Tirson Santana, FBI number 287535KB7." (See Exhibit A)

This means that on August 19, 2004, it was confirmed that the individual who had given the name German Rivera to the Boston Police Department was truly Tirson Santana. This fact does not appear to be disputed by the Government as gleaned by the Government statement of facts and incorporated in the PSR at ¶ (10) and (11).

Additionally, the defendant was served with Notice of Intent/Decision to Reinstate Prior Order that was executed on August 23, 2004. (See Exhibit B and Exhibit C). It seems clear that at the latest, the defendant was identified and "found in" the United States on August 23, 2004. Additionally there is a Memorandum of "Prosecution Amenability" that states the defendant was subject to prosecution on August 23, 2004 (See Exhibit D). Therefore, the defendant was "found in" the United States certainly no later than August 23, 2004. In any event, it was not after the date he was convicted in Roxbury District Court which was January 28, 2005. (See Exhibit E)

As a result, the defendant should not be give a two (2) point enhancement merely because the government declined to bring an Indictment when the defendant was first "found in" the United States and instead waited until approximately one year later. To hold otherwise would be unfair, inequitable, represent a manipulation of the guidelines and would create factual discrepancies.

In United States v. Rodriguez, 26 F.3d 4 (1st Cir. 1994) the government argued that 8 U.S.C. § 1326 (a)(2) describes three separate occasions on which a deported alien can commit an offense under the statute: when he or she (1) illegally enters the United States; (2) attempts illegally to enter the United States; or (3) is found in the United States. Courts have found that it is our duty `to give effect, if possible, to every clause and word of a statute.'" United States v. Menasche, 348 U.S. 528, 538-39, (1955). Applying this principle, the Rodriguez court found that "enters," "attempts to enter," and "is at any time found in" describes three distinct occasions

on which a deported alien can violate Section 1326.  The phrase "found in" otherwise would be surplusage, because it would be redundant with "enters." *Accord* United States v. Whittaker, 999 F.2d 38, 41-43 (2d Cir. 1993); United States v. Gonzales, 988 F.2d 16, 18 (5th Cir. 1993); United States v. Alvarez-Quintero, 788 F. Supp. 132, 133-34 (D.R.I. 1992).  This construction is consistent with the legislative history discussed in United States v. DiSantillo, 615 F.2d 128, 134-35 (3d Cir. 1980).

In DiSantillo, the court noted that when Congress reenacted the statute in 1952, it added the term "found," but did not remove "enters." *Id.* at 135.  In so doing, the court concluded, Congress must have intended to broaden the statute to include the crime committed when an alien enters the United States surreptitiously, of which the INS would have no official record, as well as the crimes committed by entry, or  attempted entry, through regular immigration procedures.  There is no other apparent reason for retaining the word "enters." *Id.* The court was persuaded that the amendment was aimed at ensuring that aliens who were not apprehended as they reentered the country nevertheless could be prosecuted for unlawful entry whenever they were found.  *See also* United States v Canals-Jimenez, 943 F.2d 1284, 1286-89 (11th Cir. 1991) (following DiSantillo in concluding that an alien who had sought admission through recognized immigration port of entry, and thus was physically "in" the country, could not be prosecuted under the "found in" clause, because that clause was intended to apply to aliens who have entered surreptitiously).

The question of what constitutes being "found" under 8 U.S.C. § 1326 means being "discovered" in the United States, and it has two components:  First, the authorities discover the physical presence of the deported alien, and second, it ascertains the alien's identity (as an illegal alien) and status (as one who has reentered after previous deportation).  See United States v.

4

Bencomo-Castillo, 176 F.3d 1300, 1303 (10th Cir. 1999); United States v. Diaz-Diaz, 135 F.3d 572, 577 (8th Cir. 1998); United States v. Asibor, 109 F.3d 1023, 1031-32 (5th Cir.), cert. denied, 118 S. Ct. 254 (1997); United States v. Rivera- Ventura, 72 F.3d 277, 282 (2d Cir. 1995); United States v. Gomez, 38 F.3d 1031, 1036 (8th Cir. 1994).  When an alien reenters the country by using an alias, or uses false identification when his illegal presence in the United States is discovered, he is not identifiable and hence not "found."  *See* Bencomo-Castillo, 176 F.3d at 1303 (citing United States v. Whittaker, 999 F.2d 38, 42 (2d Cir. 1993)).

In United States v. Hernandez, 189 F.3d 785 (9th Cir. 1999) the court held that a 'found in' violation is a continuing violation until the alien is discovered by immigration authorities and at that point the offense of being 'found in' ends.  To hold otherwise would produce unfair and absurd results.  Id. at 791.  See United States v. Lennon, 372 F.3d 535 (3rd Cir. 2994)(defendant was 'found in' when defendant was actually discovered)

The Tenth Circuit, in United States v. Bencomo-Castillo, 176 F.3d 1300 (10th Cir. 1999), considered whether an alien who was arrested under an alias was considered "found" once the INS should have discovered that the alien was a prior deportee.  The Tenth Circuit held that immigration authorities should exercise the level of diligence that is typical of law enforcement authorities when investigating whether the presence of an alien is illegal.  See Bencomo-Castillo, 176 F.3d at 1303; see also United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir.), cert. denied, 517 U.S. 1228 (1996); Rivera-Ventura, 72 F.3d at 281-82; Gomez, 38 F.3d at 1037-38.

The government satisfies the "found" element of § 1326 when it "discovers" a deported alien within the United States.  *See* United States v. Meraz-Valeta, 26 F.3d 992, 997 (10th Cir. 1994) ("The 'found in' language of § 1326(a) informs an alien who has been previously deported and returns to the United States without the permission of the Attorney General that he or she

will be deemed guilty of an offense upon discovery within the United States."), *overruled on other grounds*, United States v. Aguirre-Tello, 353 F.3d 1199 (10th Cir. 2004) (en banc).  The "found" element is complete at the moment authorities discover an alien's presence in the United States and know the presence is illegal, but it is not a continuing offense that lasts past the moment when those two factors converge.   There is no indication that Congress intended being "found" itself to be treated as a continuing offense so that an alien whom the authorities have once taken into custody with knowledge of the illegality of his presence may be repeatedly deemed to have been "found" at some later time or times.  United States v. Rivera-Ventura, 72 F.3d 277, 282 (2d Cir. 1995).

In United States v. Meraz-Valeta, 26 F.3d 992, 997 (10th Cir. 1994), the Tenth Circuit adopted the Second Circuit's view that the "found in" language of § 1326(a) is synonymous with "discovered in" and this language is not ambiguous or constitutionally vague. Id. (citing United States v. Whittaker, 999 F.2d 38, 42 (2d Cir. 1993)); *see also* United States v. Gomez, 38 F.3d 1031, 1036 (8th Cir. 1994) (noting that this is the prevailing interpretation).  In Whittaker, the Second Circuit stated that an alien who gave an alias upon reentering the United States at an official checkpoint had not been "found" because his documentation, although containing his photograph, used a fictitious name.  There was, thus, no way the INS could have identified him as a previously deported alien at the time of his reentry.  That is the precise situation Congress sought to cover when, in 1972, it amended the Statute to cover aliens who were found in the United States following their illegal entry. Whittaker, 999 F.2d at 42.  Other circuits have agreed that, for an alien to be "found," the government must have "knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities." United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996); see also United States v. Rivera-

Ventura, 72 F.3d 277, 281-82 (2d Cir. 1995).

In United States v. Gomez, 38 F.3d 1031, 1036 (8th Cir. 1994), the court stated that an alien is found in the United States when that alien is "discovered in" the United States. *See* United States v. Canals-Jimenez, 943 F.2d 1284, 1287 (11th Cir. 1991)("The phrase 'found in' is synonymous with 'discovered in.'"); United States v. Whittaker, 999 F.2d 38, 41 (2d Cir. 1993)(alien's being found in United States means "his presence is discovered"); United States v. DiSantillo, 615 F.2d 128, 137 (3d Cir. 1980)(alien is found when "his presence is first noted by the immigration authorities"). The court in Gomez went on to say that a § 1326 "found in" violation, "is a continuing violation that is not complete until the alien is *'discovered' by immigration authorities.*" Gomez, 38 F.3d at 1035 (emphasis added).

The Fifth Circuit adopted the reasoning in Gomez and held that "a previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can be reasonably attributed to the immigration authorities." United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996).

Referring specifically to § 1326, the Second Circuit has stated there is "no indication that Congress intended being 'found' itself to be treated as a continuing offense so that an alien whom the authorities have once taken into custody with the knowledge of the illegality of his presence may be repeatedly deemed to have been 'found' at some later time or times." United States v. Rivera-Ventura, 72 F.3d 277, 282 (2d Cir. 1995).

If Congress intended that that the defendant could be prosecuted even after initially being discovered in the United States, Congress could have used the phrase "remains in." Id. at 277. Instead, Congress used "found in." Therefore, the defendant could not have been 'found in' for

purposes of § 1326 after being fingerprinted and served with the Notice of Intent/Decision to Reinstate Prior Order that was executed on August 23, 2004.  To do so would be to "repeatedly deem" him to be found at some later time, even after being discovered by the INS/ICE, to be in contravention of congressional intent.

Any argument that the defendant was "found in" the United States when he was *indicted* is to no avail. While the Fifth Circuit in <u>Santana-Castellano</u> 74 F.3d at 598 does say that "'[a] continuing offense, by its very nature, does not terminate until the date of the indictment'" (citing <u>United States v. Maxim</u>, 55 F.3d 394, 398 (8th Cir. 1995)), it went on to *hold* that a previously deported alien is "found in" the United States when his physical presence is discovered and noted by the immigration authorities.

The fact of committing the instant offenses less than two years following the defendant's release from custody is a sentencing factor for violations of 8 U.S.C. § 1326, **not an element of the crime** of being "found" in the United States.  Compare <u>Harris v. United States,</u> 536 U.S. 545, 549, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (Section 4A1.1(d) defines a sentencing enhancement, not an element of the offense.) (distinguishing between elements of a crime and sentencing factors on the ground that the latter are "not subject to the Constitution's indictment, jury, and proof requirements"). <u>United States v. Figuereo</u>, 404 F.3d 537 (1st Cir. 2005).

While illegal reentry is a "continuing offense" and the offense commences upon the alien's illegal reentry into the United States and continues until the alien is found by authorities, being 'found in' does not.  <u>United States v. Rivera-Ventura</u>, 72 F.3d 277 (2d Cir. 1995).  <u>Rivera-Ventura</u> dealt with the issue of when the statute of limitations begins to run for the crime of being "found in" the United States after illegally re-entering the United States in violation of 8 U.S.C. § 1326.  The court held that once an alien is discovered to be unlawfully in the United

States, the offense of being found in the United States is complete and does not constitute a continuing offense from that time forward.  Thus, once the alien is found by officials, the statute of limitations begins to run.  Id.  The court noted that "to the extent that 8 U.S.C. § 1326(a) makes it a crime to be 'found in' the United States, that provision is the practical equivalent of making unlawful 'entry' a continuing offense until at least such time as the alien is located." Id. at 282.  The Court concluded that 8 U.S.C. § 1326(a) was not intended by Congress to be treated as a continuing offense.  Id. at 281.

Other circuit courts have also held that the offense of being 'found in' the United States in violation of 8 U.S.C. § 1326(a) is a continuing offense that that commences upon re-entry and continues until the alien is discovered.  United States v. Morgan, 380 F.3d 698, 703 (2d Cir. 2004); United States v. Lopez-Flores, 275 F.3d 661, 663 (7th Cir. 2001); United States v. Pacheco-Medina, 212 F.3d 1162, 1166 (9th Cir. 2000).

In the instant case, the government had actual knowledge of Mr. Santana's prior deportation on August 19, 2004 when the FBI matched the fingerprints, and certainly no later than August 23, 2004 as evidenced by the memorandum of "Prosecution Amenability" and the Notice of Intent/Decision to Reinstate Prior Order. Therefore, the defendant should not be give a two (2) point enhancement merely because the government declined to bring an Indictment when the defendant was first "found in" the United States

## III - SENTENCING UNDER BOOKER

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines.  United States v. Booker, 543 U.S.

220, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in <u>Blakely</u> and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. <u>Id</u>. at 751. Accordingly, reaffirming its holding in <u>Apprendi</u> the Court concluded that:

> [any] fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

<u>Id</u>. at 756. [1]

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. <u>Booker,</u> 125 S.Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." <u>Id</u>. at 757. The First Circuit recently held last month, "We do not find it helpful to talk about the guidelines as "presumptively" controlling or a guidelines sentence as "per se reasonable," <u>United States v. Jimenez-Beltre</u>, 05-1268 (1st Cir. 2006).

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by <u>Booker</u>, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory

---

[1] It should be noted that the fact-of-prior-conviction exception to the <u>Apprendi</u> rule is based on <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998). But the continued vitality of this case and the exception it created has been called into question not only by the broad reasoning of <u>Booker</u> itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by <u>Shepard v. United States,</u> 125 S.Ct. 1254 (2005). <u>Shepard</u> sharply limits the <u>Almendarez-Torres</u> exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records. As Justice Thomas notes, moreover, five justices agree that <u>Almendarez-Torres</u> was wrongly decided. 125 S.Ct. at 1264 (Thomas, J., concurring).

concerns as well.  See § 3553(a);  <u>Booker</u> 125 S. Ct. at 757.  Therefore, under <u>Booker</u>, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

In <u>Booker</u>, the U.S. Supreme Court, per Justice Stevens, ruled that the Federal Sentencing Guidelines were only advisory in nature and not mandatory.  This decision was reached as an extension of <u>Apprendi</u> and <u>Blakely</u> because the U.S.S.G. requires upward departures when the sentencing court finds certain facts to exist.  In the absence of the fact of a prior conviction, the aggravating factors must be determined by a jury beyond a reasonable doubt.  The majority rejected the government's argument that there would only be an <u>Apprendi</u>/<u>Blakely</u> violation if the ultimate sentence exceeded the applicable maximum sentence for the crime.  In rejecting the argument, the majority found that the remedy was to strike the "mandatory" provisions, paired with permitting the trial court to "consider" the guidelines and to impose a sentence that fulfills the standard sentencing goals found in 18 U.S.C. § 3553.  In Justice Stevens' own language, it is now Congress' decision on what to do, "the ball now lies in Congress' court.  The National Legislature is equipped to devise and install, long term, a sentencing system compatible with the Constitution that Congress judges best for the federal system of judges."

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph 2."  Section 3553(a)(2) states that such purposes are:

> **(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
> **(B) to afford adequate deterrence to criminal conduct**
> **(C) to protect the public from further crimes of the defendant; and**
> **(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

> **1) "the nature and circumstances of the offense and the history and characteristics of the defendant" §3553(a)(1);**
> **2) "the kinds of sentences available" (§ 3553(a)(3);**
> **3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct §3553(a)(6);**
> **4) "the need to provide restitution to any victims of the offense." § 3553(a)(7).**

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. § 5H1. *See also* United States v. Nellum, Slip Copy, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind., Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism

reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, 359 F.Supp.2d 521, (W.D. Va. Mar. 7, 2005) (Jones, J)(concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth (age 17) when he committed his predicate offenses and noting that in Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would be "inconsistent with the holdings of the merits majority in Booker rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore"  United States v. Ranum, 353 F Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J).  As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker.  United States v. Jaber, 362 F.Supp.2d 365, 2005, (D. Mass. March 16, 2005) (Gertner, J).  *See also* United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence any within the statutory range. If the majority thought otherwise — if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed — its opinion would surely say so.

<u>Booker,</u> 125 S. Ct. at 791 (Scalia, J., dissenting in part).  Likewise, if the remedial majority

thought the guidelines had to be given "heavy weight," its opinion would have said so.  The

remedial majority clearly understood that giving any special weight to the guideline range

relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a) factors,

not just the guidelines, in determining a sentence that is sufficient, but not greater than necessary,

to meet the goals of sentencing.  And where the guidelines conflict with other sentencing factors

set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines.

See <u>United States v. Denardi,</u> 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part,

dissenting in part) (arguing that since § 3553(a) requires sentence to be no greater than necessary

to meet the purposes of sentencing, imposition of sentence greater than necessary to meet those

purposes violates the statute and is reversible, even if within guideline range).

## IV - THE OFFENSE

There are probably three categories of illegal re-entry defendants: those that reenter in

order to commit additional crimes, those that re-enter for some other purpose but who commit an

additional offense and those who return for non-criminal purposes an do not commit additional

crimes.  It seems that Mr. Santana falls closest to the to the middle category,  He did not return to

the United States for the purpose of engaging in criminal conduct.  He returned to be with his

family.  He worked as an auto body repairman and contributed to the support of his family.

## V – APPLICATION OF THE STATUTORY SENTENCING FACTORS

As we just examined under the Supreme Court's decision in <u>United States v. Booker</u>, 125

S.Ct. 738 (2005) a court must look to 18 U.S.C. § 3553(a), and impose a sentence that is

"sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). <u>Booker,</u> 125 S.Ct. at 764-65.  In imposing sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7).  Therefore, in the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**1.  Nature and circumstances of the offense and the history and characteristics of the defendant  § 3553(a)(1)**.

Mr. Santana is a native of the Dominican Republic and was born there in 1960.  He initially entered the United States at the Mexican Border without inspection in 1981.  He applied for and received temporary resident status under then INS's Special Agricultural Worker Program in 1989.  He then applied for and received Permanent Legal Resident Status in 1991. His applying for temporary resident status and also Permanent Legal Resident Status indicated a good faith effort on behalf of Mr. Santana to comply with the Immigration Laws of the United States.

Additionally, Mr. Santana grew up quite poor.  In fact, there was barely enough money for food or clothes **PSR ¶ (38)**.  He grew up with little opportunity and no resources.  While it is not an excuse, it is certainly understandable why the defendant wanted to reenter the United States and be with his family.

**2.    The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" § 3553(a)(2)(A).**

The defendant's proposed sentence is severe and adequate to reflect the goal of this factor.  He has been incarcerated since July 16, 2004 and will continue to be incarcerated and the defendant suggests that the aggregate total of imprisonment is substantial, and therefore the proposed sentence is reasonable, sufficient and not greater than necessary.  Additionally, after

15

the defendant has finished his sentence, he will be deported to the Dominican Republic and this, in light of the fact that his family is in Massachusetts, is also a form of punishment.

Additionally, if the defendant had been charged with the federal offense while still serving his state sentence, the federal sentence may, under U.S.S.G. Section(s) 5G1.3(c), have been set to run concurrently with the state sentence to "achieve a reasonable punishment for the instant offense". That provision gives the district court latitude to make a new sentence concurrent to or consecutive with one already being served. Concurrency would have effectively subtracted from the federal sentence any time served on the state sentence.

**3.    The need for the sentence "to afford adequate deterrence to criminal conduct" § 3553(a)(2)(B).**

Given the circumstances of this case, the defendant's proposed sentence will satisfy this condition and is therefore, appropriate.

**4.    The need for the sentence "to protect the public from further crimes of the defendant" § 3553(a)(2)(c).**

The defendant has realized that he has made a significant mistake in re-entering the United States. He wants the Court to have assurance that he will never do this again and therefore, the public would be protected from further crimes of the defendant.

**5.    The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" § 3553(a)(2)(D).**

Because the defendant will be deported, it does not appear that this is a priority.

**6.    The "kinds of sentences available." § 3553(a)(3).**

In Booker the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 125 S. Ct. at 756. This renders the sentencing guidelines

16

advisory. Id.  Therefore, the proposed sentence is available to the court.

**7.    The "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement" § 3553(a)(4) & (5).**

The defendant respectfully moves this Court to consider a non guideline sentence because of the overall  period of incarceration the defendant  faces and the fact that the defendant will be deported.

**8.    The "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" §3553(a)(6).**

The defendant respectfully suggests that a below-guidelines sentence is necessary to avoid the "unwarranted sentencing disparity," between those districts that have so-called "fast-track" systems for prosecuting and sentencing illegally re-entering aliens and other districts, like Massachusetts, that do not.  Under these procedures, meant to cope with heavy case loads in border courts, Congress has authorized special downward departures for defendants who waive certain procedural rights in districts where the Attorney General has authorized "fast-track" procedures.  United States v. Martinez-Flores, 428 F.3d 22, 24 (1st Cir. 2005). The lack of a "fast-track" system in Massachusetts permits disparities.  The defendant recognizes that they are the result of a congressional choice made for prudential reasons, implicitly qualifying the general aim of equality.  United States v. Jimenez-Beltre, 05-1268 (1st Cir. 2006). Whether it would even be permissible to give a lower sentence on the ground sought is itself an open question. Martinez-Flores, 428 at 30 n. 3.

Fast-track programs have been adopted by individual United States Attorneys and authorized by the Attorney General in some federal jurisdictions, but not all, and not in Massachusetts.  Therefore the defendant faces a longer sentence than similarly situated defendants elsewhere in the country. This disparity, has not been adequately taken into

consideration in formulating the Sentencing Guidelines, and therefore this district court can rely on it.  It is arguable that Congress violated the nondelegation doctrine by conferring too much discretion on the Attorney General to decide when and where to implement fast-track procedures.   However, this argument was recently rejected in United States v. Martinez Flores, 428 F.3d 22 (1st Cir. 2005).

Fast-track sentencing originated not with Congress, but with federal prosecutors in states bordering Mexico. See generally Erin T.  Middleton, *Fast-Track to Disparity: How Federal Sentencing Policies Along the Southwest Border are Undermining the Sentencing Guidelines and Violating Equal Protection,* 2004 Utah L.Rev. 827, 831.  Faced with a burgeoning load of illegal re-entry and other immigration cases, federal prosecutors in Texas, New Mexico, Arizona, and California adopted policies designed to speed case processing. *Id.*  In the typical fast-track system, defendants who agreed to plead guilty at an early stage, and to waive their rights to file motions and to appeal, were rewarded with shorter sentences, either via charge-bargaining or promises of a recommendation for departure at sentencing. *Id.* at 829-30. United States v. Melendez-Torres, 420 F.3d 45, 52 (1st Cir. 2005) (citing the Ashcroft Memorandum).

In 2003, Congress endorsed the fast-track concept in a provision of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), Pub.L.No. 108-21, 117 Stat. 650 (2003) (codified in scattered Sections of 18, 28, and 42 U.S.C.). The applicable provision, §401(m)(2)(B) ("the PROTECT Act provision"), instructed the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the

United States Attorney." 117 Stat. at 675.  Pursuant to this dictate, the Sentencing Commission added a new Guidelines provision, effective October 27, 2003, authorizing the four-level departure. *See* U.S.S.G. § 5K3.1 (permitting departure and using the same language as the PROTECT Act provision).

Prior to Booker, at least three circuit courts had held that fast-track disparities did not under the Guidelines justify downward departure. See United States v. Banuelos-Rodriguez, 215 F.3d 969, 973 (9th Cir. 2000) (en banc) ("We fail to see how the decision of [federal prosecutors in another district to adopt fast-track procedures] . . . can be a `mitigating circumstance' with regard to Defendant or his crime."); United States v. Armenta-Castro, 227 F.3d 1255, 1257 (10th Cir. 2000) (same); United States v. Bonnet-Grullon, 212 F.3d 692, 705-06 (2d Cir. 2000) (rejecting possibility of downward departure to offset disparities created by the Southern District of California's charge-bargaining fast-track system).

However, the question is different post-*Booker*.  The Supreme Court's holding in that case excised § 3553(b)(1) from the statutory scheme and rendered the Guidelines non-mandatory. *Booker*, 125 S.Ct. at 764-67.  As a result, § 3553(a), which contains a list of factors to be considered by federal judges in imposing sentences, has taken on renewed importance.  Under § 3553(a)(6), district court judges may now consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" when imposing sentence.

**9.      The need to provide restitution to any victims of the offense**

Restitution is not a factor in this case.

## VI - CONCLUSION

For all of the foregoing reasons, Tirson Santana requests the Court impose a sentence of 24-30 months. All of the facts and mitigating circumstances involved create a compelling argument for a non-guideline sentence. The defendant suggests that this sentence is sufficient, but not greater than necessary to comply with the purposes and statutory directives set forth in 18 U.S.C. § 3553 and that the defendant's sentencing recommendation takes into account all of these factors.

<div style="margin-left:40%">

Respectfully Submitted,
Tirson Santana
By his attorney

</div>

Date: April 11, 2006

<div style="margin-left:40%">

 /s/ Glen P. Randall
Glen P. Randall
Murphy & Randall, LLP
50 Burlington Mall Road, Suite 100
Burlington, Massachusetts 01803
(781) 238-0300

</div>

### CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2006 a true copy of the above Motion, as well as the Memorandum of Law and Affidavits in support thereof, was served upon Nadine Pellegrini, AUSA, U.S Courthouse, 1 Courthouse Way, Suite 9200, Boston, Massachusetts 02110, by filing this document through the ECF system and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants via first-class mail, postage prepaid.

 /s/ Glen P. Randall
Glen P. Randall

AUG-19-04  11:13AM  FROM-FBI, CJI   VISION, CLARKSBURG, WV        +304625558B        T-124  P.001/001  F-986

## FEDERAL BUREAU OF INVESTIGATION
## U.S. DEPARTMENT OF JUSTICE
## CLARKSBURG, WV

Date:  Thursday, August 19, 2004



**TO:**

US IMMIGRATION AND, NATURALIZA

BOSTON, MA  022030701

**ATTN:**

**FROM:**  **DCFBIWAD2**
**FBI**
**SPECIAL PROCESSING CENTER - MODULE E-2**
**1000 CUSTER HOLLOW ROAD**
**CLARKSBURG, WV 26306**

**PHONE:** 304-625-5584 (24 HOUR  - VOICE)
304-625-5587 (24 HOUR  - AUTO FAX)

**SUBJECT:**  RIVERA,GERMAN OCASIO

**YOUR CASE #:**

**DATE PRINTS SUBMITTED:**  8/19/2004

The fingerprints you submitted on the above subject are identical with:

SANTANA GUERRERO,TIRSON  FBI # 287535KB7

This subject's criminal history is available in and must be
obtained through the NCIC Interstate Identification Index (III).

AUTHORIZATION:  KJD/JRG

**CONFIDENTIALITY NOTICE**

This facsimile transmission may contain confidential information belonging to the sender which is protected by law. The
information is intended only for the use of the recipient named above. If you are not the intended recipient, you are hereby
notified that any disclosure, copying, distribution or taking of any actions in reliance on the contents of this transmission is
strictly prohibited.

●                                        ●

U. S. Department of Justice Immigration
and Naturalization Service

# Notice of Intent/Decision to Reinstate Prior Order

File No. <u>A092 013 651</u> Case
No: B0S0408000259
Date: August 19, 2004

Name: Tirson SANTANA AKA: Santana-Guererro, TIRSON; Rivera, GERMAN OCASIO

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR241.8, you are hereby notified that the Attorney General intends to reinstate the order of <u>Removal</u> entered against you. This intent is based on

<div align="center">(Deportation I exclusion I removal)</div>

the following determinations:

1. You are an alien subject to a prior order of deportation *I* exclusion *I* removal entered on <u>October 3, 2000</u>     at
<div style="text-align:center">(Date)</div>

<u>Boston, Massachusetts</u>
(Location)

2. You have been identified as an alien who:

X was removed on <u>November 11, 2000</u>     pursuant to an order of deportation *I* exclusion *I* removal.
<div style="text-align:center">(Date)</div>

departed voluntarily on                      pursuant to an order of deportation *I* exclusion *I* removal on or
<div style="text-align:center">(Date)</div>
after the date on which such order took effect (Le., who self-deported).

3. You illegally reentered the United States on or about <u>Unknown Date</u>     at or near <u>Unknown Place</u>
<div style="text-align:center">(Date)                      (Location)</div>

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You do not have a right to a hearing before an immigration judge.

*The facts that formed the basic of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* <u>ENGLISH/SPANISH</u>     *language.*

W:ILL:IAM SANSONE
(Printed or typed name of official)                      (Signature of officer)

<div align="center">SPECIAL AGENT</div>

(Title of officer)

<div align="center">Acknowledgment and Response</div>

I ☐ do ☒ do not wish to make a statement contesting this determination.

8/23/2004                      ☒ TIRSON SANTANA
(Date)                      (Signature of Alien)

<div align="center">Decision, Order, and Officer's Certification</div>

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with sec~ 241(a)(5) of the Act.

8/23/04      Boston, MA
(Location)                      (Signature of authorized deciding INS official)

CHERYL BASSETT                      SUPERV:ISORY SPECIAL AGENT
(Printed or typed name of official)                      (Title)

US. Department of Justice

Immigration and Naturalization Service

**Immigration Detainer - Notice of Action**

Case No: BOS0408000259

File No. A092 013 651

Date: August 19, 2004

To: (Name and title of institution)
SUFFOLK HOC SBAY
20 BRADSTON STREE'1'
BOSTON, MA 02118

From: (INS office address)
BOSTON, MA, DJSTRICT OFFJCE
DISTRICT DIRECTOR
JOHN F. KENNEDY FEDERAL BUILDING
Boston, MA 02203

**Nashua Street  44-4412-2**

Name of alien: SANTANA, Tirson AKA: Santana -Guererro, TIRSON; Rivera, GERMAN OCASJIO

Date of birth: 08/30/1960        Nationality: DOMINICAN REPUBLIC        Sex: M

You are advised that the action noted below has been taken by the Immigration and Naturalization Service concerning the above-named inmate of your institution:

Investigation has been initiated to detennine whether this person is subject to removal from the United States.

A Notice to Appear or other charging document initiating removal proceedings, a copy of which is attached, was served on

(Date)

A warrant of arrest in removal proceedings, a copy of which is attached, was served on                (Date

X  Deportation or removal from the United States has been ordered.

It is requested that you:

Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work, and quarters assignments, or other treatment which he or she would otherwise receive.

X  Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody of the alien. You may notify INS by calling (617) 565-3304 during business hours or        802-872-6020        after hours in an emergency.

x  Please complete and sign the bottom block of the duplicate of this form and return it to this office.   A self-addressed stamped envelope is enclosed for your convenience. 0 Please return a signed copy via facsimile to

Area Code and facsimile number

Return fax to the attention of                                , at
                        (Name of INS officer handling case)            (Area code and phone number)

X Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

X Notify this office in the event of the inmate's death or transfer to another institution.

Please cancel the detainer previously placed by this Service on

WILLIAM SANSONE                                    SPECIAL AGENT
            (Signature of INS official)                                (Title of INS official)

Receipt acknowledged:

Date of latest conviction:              Latest conviction charge:
Estimated release date:

Signature and title of official:

Form 1-247 (Rev. 4-1-97)N



,Jce of Investigations

*U.S.* Department of Homeland Security,
10 Causeway Street. Room 722
Boston, MA 02222

## U.S.Immigration and Customs Enforcement

Date 8/23/04

MEMORANDUM FOR:        DRO, Boston, MA

FROM:                  Office of Investigations
                       Boston, MA

SUBJECT:               Prosecution Amenability

                       Name:   Tirson   Santana

# File#:A92013651

The individual listed above is amenable to Federal Prosecution (8 USC 1326, Reentry After Deportation/Removal). DRO efforts to remove subject should continue regardless of the status of the federal prosecution.

Prior to removal, release or other transfer of custody please contact Supervisory Special Agent Cheryl Bassett at 617 565 3103 (main number 565 3100).

| CHECKLIST | INITIALS & DATE | |
| --- | --- | --- |
| | IEO/SA | SSA |
| 1-2 I 4 WARNING RIGHTS (MIRANDA) | 8/12/04 WPS | |
| 1-213 RECORD OF DEPORTABLE ALIEN | 8/23/04 WPS | |
| 1-871 NOTICE OF REINSTSTEMENT | 8/23/04 WPS | |
| FINGERPRINT COMPARISON LETTER | 8/12/04 WPS | |
| EXECUTED WARRANT OF DEPORTATION | 11/11/00 WPS | |
| COPY OF FILE INCLUDING PRINTS & PHOTOS | | |
| COMPLETE CRIMINAL HISTORY | 8/2/04 | |
| REFERRED TO PROSECUTIONS OFFICER RED | | |
| MEMO ON OUTSIDE COVER OF FILE | 8/23/04 WPS | |



U.S. Department of Justice          ●                    Continuation Page for Form          I-213
Immigration and Naturalization Service

| Alien's Name | File Number | **I** Date |
|---|---|---|
| SANTANA. Tirson | Case No: BOS0408000259<br>A092 013 651 | 108/19/2004 |

SANTANA was encountered by INS on 12/12/1999 at the FMC Devens. SANTANA served a 33-month sentence for possession with intent to distribute cocaine. SANTANA was ordered deported on 10/3/2000 by Immigration Judge Thomas Ragno in Boston, MA.
SANTANA was removed from the United States on November 11, 2000 via American Airline flight 635 from JFK Airport in New York City to Santo Domingo, Dominican Republic. A warrant of removal was executed on November 11, 2000 with the right index fingerprint of SANTANA.


SANTANA was encountered by the BPD on July 15, 2004 for trafficking of a controlled substance, to wit: cocaine. SANTANA was arrested under the name of German RIVERA, with a date of birth of 1/2/1964. This case has been continued until 9/22/2004.

On August 19, 2004 Special Agent William Sansone sent the 10 fingerprint card from the BPD taken on July 15, 2004 and the right index fingerprint from the executed I-205 warrant of removal to the FBI: for comparison. The fingerprints were an identical match.

SANTANA was interviewed by Special Agent William Sansone at the Nashua Street Jail on August 12, 2004. SANTANA was read his Constitutional rights per Miranda and SANTANA invoked his right to legal council.

SANTANA was served a notice/decision to reinstate a prior order of removal on August 23, 2004.

Signature WILLIAM SANSONE ~~

Title

SPECIAL AGENT

2    of    2    Pages